UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RASHAD LAMONE JONES,

Plaintiff,

v.

CITY OF SAN JOSE, et al.,

Defendants.

Case No. 5:26-cv-03842-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. Nos. 12, 23

Pro se Plaintiff brings several civil rights claims under California and federal law against the City of San Jose ("City"), San Jose Police Department ("SJPD"), SJPD Officers Gifford and Hoqoq ("Officer Defendants") (collectively, "City Defendants"), and the County of Santa Clara ("County") arising out of Plaintiff's arrest and detention. Compl., ECF No. 1-1. Before the Court are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by City Defendants and the County. City Defs. Mot., ECF No. 12; County Mot., ECF No. 23. Both motions are fully briefed. Opp'n, ECF No. 31; City Defs. Reply, ECF No. 33; County Reply, ECF No. 32.

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** both motions to dismiss with leave to amend.

Before the Court proceeds, the Court encourages Plaintiff to contact the Federal Pro Se Program, a free program that offers limited legal services and advice to parties who are

representing themselves. Help is provided by appointment and on a drop-in basis. The program is located in the United States Courthouse at 280 South 1st Street in San Jose, and parties may make appointments by calling (408) 297-1480. Plaintiff may access the court's Handbook for Pro Se Litigants, available at https://cand.uscourts.gov/pro-se-litigants/ or from the Clerk's Office. Additional information regarding the Federal Pro Se Program is available at http://cand.uscourts.gov/helpcentersj.

## I. BACKGROUND

Plaintiff alleges that Officer Defendants racially profiled him, pulled him over under false pretenses, searched his body and his car without consent, arrested him without cause, detained him in the Santa Clara County jail for approximately one month, and lied to the Superior Court during Plaintiff's preliminary hearing, resulting in the judge finding Officer Defendants committed perjury and dismissing Plaintiff's charges. *See* Compl.

The arrest occurred on Saturday, February 25, 2023. *Id.* ¶ 47. Plaintiff and his wife purchased food and parked on the side of Suncrest Avenue in San Jose to eat at approximately 1:10 a.m. *Id.* ¶ 14. At some point, Plaintiff observed Officer Defendants drive by in a patrol car. *Id.* ¶¶ 18–19. When Plaintiff started his vehicle and began to drive off, Officer Defendants made a U-turn, followed Plaintiff's vehicle, and eventually pulled him over. *Id.* ¶¶ 19–20. Officer Defendants claimed they pulled Plaintiff over because they observed him illegally parked along the northern red curb line of Suncrest Avenue, as well as failing to yield in an intersection and failing to stop his vehicle before a posted limit line. *Id.* ¶ 22. During this interaction, Officer Defendants also claimed they observed Plaintiff shaking and sweating, consistent with an individual who is concealing narcotics, contraband, and/or firearms. *Id.* ¶¶ 30–31. Officer Defendants accordingly instructed Plaintiff to step out of the vehicle and conducted a pat down search. They found no weapons but claimed to have found in Plaintiff's pocket "a plastic bindle that contained an off white, crystalline substance consistent with that of crustal methamphetamine." *Id.* ¶ 35. Officer Defendants then conducted a search of Plaintiff's vehicle

without consent and claimed to have found a firearm. *Id.* Officer Defendants told Plaintiff that they were going to take him to jail if he did not admit to the possession of a firearm and drugs. *Id.* ¶ 38. But Plaintiff alleges Officer Defendants fabricated all allegations and observations made during this interaction. After Plaintiff refused to admit to possession of drugs and a firearm, Officer Defendants arrested Plaintiff and booked him at the Santa Clara County jail. *Id.* ¶ 47. Plaintiff remained in the County Jail until March 26, 2023. *Id.* ¶ 24. On July 17, 2023, Plaintiff appeared for his preliminary hearing, during which time, the judge found Officer Defendants committed perjury and dismissed all claims. *Id.* ¶ 53.

Plaintiff now brings claims for false arrest, false imprisonment, racial profiling, intentional infliction of emotional distress ("IIED"), and personal injury.

Plaintiff originally filed this case in the Santa Clara Superior Court on July 2, 2024. Notice of Removal ¶ 1, ECF No. 1. Defendants removed the case to federal court on April 30, 2026, after Plaintiff served his second amended complaint alleging for the first time that his claims arose both under California state law and under 42 U.S.C. § 1983. *Id.*

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678. "The moving party has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).



United States District Court
Northern District of California

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But still, even pro se pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong" and how they are entitled to relief. *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

The Court will discuss in turn the County and City Defendants' motions to dismiss.

### A. The County

Plaintiff brings three claims against the County for false imprisonment, IIED, and personal injury. Within these claims, Plaintiff raises two theories—violation of his constitutional rights pursuant to 42 U.S.C. § 1983; and violation of California tort law.

The County argues: (1) the federal claims fail to allege facts sufficient to satisfy the *Monell* standard; (2) the state claims are time-barred under the California Government Claims Act; and (3) any claims for punitive damages should be stricken as a matter of law.

#### 1. Municipality Liability Under *Monell*

First, the Court agrees that Plaintiff failed to plead sufficient facts to pursue § 1983 claims against the County.

A municipality can only be held liable for a constitutional violation under § 1983 where the "municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984

(9th Cir. 2002) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In the absence of an express official policy, a plaintiff may allege municipal liability through a custom or practice. *See City of St. Louis v. Praprotnik*, 485 U.S. 485 U.S. 112, 127 (1988). The particular custom or practice must be "so widespread" as to have the force of law. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *Praprotnik*, 485 U.S. at 127 (noting custom or practice must be "permanent and well settled"). However, it is not enough for a plaintiff to identify a local government's custom or policy that caused her injury; the plaintiff must also demonstrate that the custom or practice "was adhered to with 'deliberate indifference to the constitutional rights of [the plaintiff].'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (quoting *Canton,* 489 U.S. at 392). A municipality can also be liable under § 1983 for failure to adequately train, supervise, or discipline its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989); *see also Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (applying the same standard to inadequate supervision claims and inadequate training claims); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (finding a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights "may rise to the level of an official government policy for purposes of § 1983" in limited circumstances). A municipality's culpability for a deprivation of rights, however, is "at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Municipal liability for failure to train also attaches only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.

To show deliberate indifference, a plaintiff must demonstrate that the municipality "was on actual or constructive notice" that its conduct or lack thereof would likely result in a constitutional violation. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012). This is an objective inquiry. *Castro*, 833 F.3d at 1076. Notice is ordinarily shown through demonstrating a pattern of similar constitutional violations by employees; however, "evidence of a pattern of constitutional

violations is not always required to succeed on a *Monell* claim." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016). "[I]n a narrow range of circumstances a particular showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." *Id.* at 794 (internal quotation marks omitted) (*Connick*, 563 U.S. at 63). For example, the Ninth Circuit stated that "a single incident of excessive force, coupled with evidence that a city had neglected to train its armed officers on the constitutional limitations on using force against fleeing felons, might establish that the city manifested deliberate indifference in training law enforcement." *Id.* (citing *City of Canton*, 489 U.S. at 390 n.10).

Here, Plaintiff does not allege that any policy, practice, or custom maintained by the County caused the constitutional violations he asserts.[1] Plaintiff alleges only that the County was responsible for the training and assignment of SJPD officers, as well as the health, safety, and welfare of all detainees and inmates in the jail in which he was housed. And while training can be cause for a claim under *Monell* in limited circumstances, the allegations here are insufficient to meet that standard. Plaintiff fails to allege facts including which training, or lack of training, caused his injury, and how. The Court also notes that the City and County are two separate entities. While the County may have been responsible for Plaintiff's well-being in the County jail, the County typically does not have a role in training City police officers.

Plaintiff also fails to allege facts sufficient to show deliberate indifference. Though Plaintiff alleges the County exhibited "deliberate indifference," there are no facts to explain how the County "was on actual or constructive notice" that its training practices, or failure to train, would likely result in a constitutional violation. *Tsao*, 698 F.3d at 1145. And further, it is unclear which conduct by the County violated Plaintiff's constitutional rights; the complaint appears to focus almost entirely on the conduct of City Defendants.

The Court accordingly **GRANTS** the County's motion to dismiss claims arising from §

[1] The Court discusses below in Section III.B.3 the constitutional violation alleged under the Fourteenth Amendment's Equal Protection Clause.

1983 with leave to amend. *Lopez*, 203 F.3d at 1127 ("[C]ourt[s] should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**2. California Government Claims Act**

Next, however, the Court finds unpersuasive arguments that Plaintiff's state law claims are barred by the California Government Claims Act ("the Act").

The County contends that, to the extent Plaintiff's claims arise under state law, Plaintiff failed to file his claims within the statute of limitations under the Act. The Act requires that parties seeking monetary damages from a California public entity or its employees first present a claim to that entity before filing suit in court. *Allums v. Bay Area Rapid Transit*, No. 25-CV-08837-LB, 2025 WL 3724142, at *7 (N.D. Cal. Dec. 23, 2025) (citing Cal. Gov't Code §§ 911.2(a), 945.4). Should a party subsequently file suit, their complaint must allege compliance with, or circumstances excusing compliance with, the Act. *See Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1243 (2004). Pursuant to the Act, "[i]f written notice is given" rejecting a claim, the claimant must file suit "not later than six months after the date such notice is personally delivered or deposited in the mail." Cal. Gov't Code § 945.6(a)(1).

Here, Plaintiff submitted a government claim for damages to the County on November 17, 2023. Compl. ¶ 56. His claim was denied on December 21, 2023, with instructions to file a court action within six months. *Id.* ¶ 59. Six months from December 21, 2023, is June 21, 2024. *See id.* Plaintiff signed and mailed his complaint to the Santa Clara Superior Court through the U.S. Postal Service on June 15, 2024, six days before this deadline. *Id.* ¶ 61A. His complaint, however, was not received and filed on the docket until July 2, 2024. *See* Notice of Removal. Plaintiff alleges that on September 6, 2024, the U.S. Postal Service informed him that his mailing experienced some sort of administrative issue, whereby "his civil complaint documents of Case No. 24CV442251 had become loose within the Post Office, and 65 pages of the Plaintiff's civil

United States District Court
Northern District of California

complaint documents were lost and returned to the Plaintiff along with 4 pages of other persons civil case documents." Compl. ¶ 61B.

The County contends that the Court should consider the official filing date as July 2, 2024, and accordingly find Plaintiff's claims time-barred. The County cites two authorities in support. First, the California Rules of Court Rule 1.20 provides that "[u]nless otherwise provided, a document is deemed filed on the date it is received by the court clerks." Second, the California Supreme Court held in a case from 1985 that "'filing' for purposes of compliance with the time limits of Labor Code section 1160.8 means what it does in all other contexts: actual delivery of the petition to the clerk at his place of business during office hours." *United Farm Workers of Am. v. Agric. Lab. Rels. Bd.*, 37 Cal. 3d 912, 918 (1985). And the Couty highlights that, prior to removal, the Superior Court found these arguments persuasive in its previous demur and granted dismissal of these claims without leave to amend.

The Court finds the County's arguments unpersuasive for several reasons.

First, as an initial matter, the Court has the authority and discretion to reconsider orders made in state court proceedings prior to removal, as it does here. After a case has been removed, "[t]he federal court takes the case as it finds it . . . and treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963) (quoting *Duncan v. Gegan*, 101 U.S. 810 (1879)). However, 28 U.S.C. § 1450 recognizes a district court's authority, after removal, to dissolve or modify orders entered by a state court before removal. 28 U.S.C. § 1450. "As such, in reconsidering an order previously entered by a state court, this Court assesses the order through the lens of applicable federal law and rules of civil procedure." *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, No. 14-CV-03953-BLF, 2015 WL 1548833, at *5 (N.D. Cal. Apr. 7, 2015); *see also Nasstech, LLC v. Osnovation Sys., Inc.*, No. 18-CV-04417-BLF, 2018 WL 3753341, at *2 (N.D. Cal. Aug. 8, 2018) (collecting cases). Under federal procedure, "[a]n interlocutory order 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Cooper*

*Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 212 (D.N.J. 2009) (quoting Fed. R. Civ. P. 54(b)) (finding re-examination of prior state court discovery rulings appropriate after removal). The Court presumes the Superior Court applied state court procedural rules in granting the County's demur. But now that this case has been removed to federal court, federal law applies. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) ("[F]ederal rather than state law governs the future course of proceedings.") (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974)). The County has failed to explain the relevance of the state court rules and orders cited, and it failed to provide any federal authority finding the same. The court's decision in *United Farm Workers of America* was also, notably, about the Labor Code, not the Act.

Second, these circumstances warrant equitable tolling of the statute of limitations between the time Plaintiff mailed his complaint and the time it was filed. "[T]he doctrines of equitable tolling and equitable estoppel may apply to" the Act's statutes of limitations where a court finds "excusable delay." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002); *see also Flowers v. Fred Hutchinson Cancer Rsch. Ctr.*, No. C17-0989-JCC, 2018 WL 2018112, at *3 (W.D. Wash. May 1, 2018) ("District courts can apply the doctrine of equitable tolling when an 'excusable delay' prevents a plaintiff from complying with a statute of limitations."). Here, Plaintiff mailed his complaint to the Superior Court six days prior to the deadline to file, and it appears that due to some sort of administrative error, his mail "had become loose within the Post Office," causing sixty-five pages to become lost. Compl. ¶ 61B. And when the U.S. Postal Service found and returned these documents, they also inadvertently included four pages of another person's civil case documents. *Id.* Presumably because of errors such as this, it took seventeen days from the date of mailing—eleven days past the statute of limitations—for Plaintiff's complaint to be received and docketed. Under these circumstances, Plaintiff's delay is excusable.

Third, allowing Plaintiff's claims to be heard on the merits, despite the mailing delays, comports with the spirit of the Act. The standard for fulfilling § 911.2 is substantial compliance—

United States District Court
Northern District of California

"[i]f a claim satisfies the purposes of the claims statutes without prejudice to the government, substantial compliance will be found." *Carlino v. Los Angeles Cnty. Flood Control Dist.*, 10 Cal. App. 4th 1526, 1534 (1992) (citing *Elias v. San Bernardino Cnty. Flood Control Dist.*, 68 Cal. App. 3d 70, 74 (Ct. App. 1977)); *see also Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 449 (2004) ("[Courts] are mindful that so long as the policies of the claims statutes are effectuated, the statutes should be given a liberal construction to permit full adjudication on the merits . . . . If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted.") (internal citation omitted) (cleaned up). One primary purpose of the Act is "to provide the public entity with sufficient information to allow it to make a thorough investigation of the matter." *Westcon Constr. Corp. v. Cnty. of Sacramento*, 152 Cal. App. 4th 183, 200 (2007). The Act is not intended to prevent cases from being heard on the merits due to technicalities and unforeseen delays with the U.S. Postal Service. Plaintiff provided the County with the information necessary to allow it to investigate his claims, and he made a good faith attempt to then file his complaint within the statute of limitations—Plaintiff's claim should not be barred from judicial review under these circumstances.

Accordingly, the Court finds that Plaintiff satisfied the Act's statute of limitations by mailing his complaint to the Superior Court on June 15, 2024, and **DENIES** the County's motion to dismiss Plaintiff's claims arising out of California state law.

**3. Punitive Damages**

Finally, the County moves to strike Plaintiff's request for punitive damages against the County is improper as a matter of law. The Court finds this issue premature.

The County cites Federal Rule of Civil Procedure 12(f) as support for its request to strike punitive damages. However, the Ninth Circuit has plainly held that Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010). The County does not

address this precedent.

The Court therefore **DENIES** the County's request to strike punitive damages at this time.

**4. Conclusion on the County's Motion to Dismiss**

Accordingly, the Court **GRANTS** the County's motion to dismiss Plaintiff's claims arising under 42 U.S.C. § 1983 with leave to amend. The Court otherwise **DENIES** the County's motion to dismiss Plaintiff's state law claims as time-barred under the Act, and **DENIES** the County's motion to strike punitive damages at this time. Other than arguing that Plaintiff's state law claims are time-barred, the County did not challenge these claims as insufficiently pled. Accordingly, Plaintiff's state claims against the County remain. However, should Plaintiff choose to amend, the Court directs Plaintiff to consider the pleading deficiencies identified below in City Defendants' motion to dismiss these same claims.

**B. City Defendants**

Moving to City Defendants, Plaintiff brings five claims for racial profiling, IIED, personal injury, false arrest, and false imprisonment. These claims also arise under two theories—violation of Plaintiff's constitutional rights pursuant to § 1983; and violation of California tort law.

City Defendants argue: (1) Defendants are immune from liability; (2) Plaintiff has not adequately pled a *Monell* violation for claims against the City and SJPD; (3) "racial profiling" is not an independent civil cause of action; (4) "personal injury" is not an independent civil cause of action; and (5) Plaintiff has not adequately pled IIED. The Court addresses each in turn.

**1. Immunity**

The Court begins with City Defendants' argument that they are immune from liability under Cal. Gov. Code § 820.2. This section provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. City Defendants also cite to § 820.4's requirement that a public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.

The Court finds City Defendants' argument misplaced for two reasons. First, the scope of § 820.2 is narrowly limited to basic policy decisions, and the Ninth Circuit has held that "[a]s a matter of law, section 820.2 immunity does not apply to an officer's decision to detain or arrest a suspect." *Liberal v. Estrada*, 632 F.3d 1064, 1084 (9th Cir. 2011), *abrogated on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023). Second, as City Defendants acknowledge, § 820.4 does not preclude Plaintiff's claims for false arrest or false imprisonment, specifically providing that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment." Cal. Gov't Code § 820.4. The Court accordingly finds these sections regarding immunity inapplicable to Plaintiff's claims against City Defendants.

**2. Municipality Liability Under *Monell***

The City and SJPD also raise *Monell* arguments similar to those raised by the County. For the same reasons as those stated above, the Court agrees that there are insufficient facts to state a claim for municipal liability against the City and SJPD. Plaintiff alleges no facts to suggest that the City or the SJPD had customs, policies, or practices that allowed officers to engage in misconduct against citizens, and no facts to support allegations of deliberate indifference.

The Court refers Plaintiff to the legal standards identified in Section III.A.1. and **GRANTS** the City and SJPD's motion to dismiss claims arising out of § 1983 with leave to amend. *Lopez*, 203 F.3d at 1127 ("[C]ourt[s] should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**3. "Racial Profiling" (42 U.S.C. § 1983 Claim for Violation of Fourth Amendment Equal Protection Clause)**

Next, City Defendants argue that "racial profiling" is not a standalone claim under California or federal law. In response, Plaintiff states that he intended his "racial profiling" claim to allege a violation of the Fourteenth Amendment's Equal Protection Clause. Opp'n 2 ("The primary authority which allows plaintiffs to allege facts that establish racial profiling as an independent civil cause of action is 42 U.S.C. Section 1983 (the Federal Civil Rights Act), which

allows individuals to file lawsuits against law enforcement officers and municipalities for constitutional violations under color of law.”).

Though Plaintiff admittedly mislabeled his claim, given his status as a pro se litigant, the Court will construe this claim as a violation of the Equal Protection Clause under the Fourteenth Amendment. This interpretation is supported by the allegations in the complaint. Under Plaintiff's claim titled “racial profiling,” Plaintiff cites 42 U.S.C. § 1983 and alleges that City Defendants,

> acting under the color of state law in their individual and personal capacities, deprived PLAINTIFF of the rights, privileges and Immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, to not be deprived of liberty without due process of law, by subjecting him, or through their deliberate indifference allowing others to subject him to racial profiling while the PLAINTIFF is an African American born citizen of the United States and the Defendants OFFICER GIFFORD AND OFFICER HOQOQ are not African American citizens . . . .

Compl. ¶ 78.[2]

However, even when examined under this lens, the Court finds Plaintiff failed to allege facts sufficient to state a claim.[3] “The Equal Protection Clause of the Fourteenth Amendment commands that no State shall ‘deny to any person within its jurisdiction the equal protection of the laws,’ which is essentially a direction that all persons similarly situated should be treated alike.” *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). An equal protection claim may allege discrimination based on membership in a protected class, where “a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.” *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998). In order to establish that a defendant's conduct amounts to

---

[2] However, Plaintiff's other citations to California law, specifically Cal. Penal Code §§ 745, 13519.4, do not create a private right of action. And though Plaintiff also notes the Fourth Amendment in his complaint at various places, he does not contend that his claim for “racial profiling” was intended to be a claim for violating the Fourth Amendment.

[3] Given the Court's finding above that claims against the City and SJPD fail under the *Monell* standard, the Court will examine this claim as it pertains to Officer Defendants only.

"intentional discrimination," a plaintiff must show that the defendant "acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). In other words, a plaintiff need not show "the challenged action rested solely on racially discriminatory purposes." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Rather, a plaintiff must show the discriminatory purpose was a "motivating factor" for the challenged action. *Id.* at 265–66. That is, a plaintiff must show the challenged action was taken "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Here, Plaintiff alleges that the only reason Officer Defendants pulled him over and arrested him is because he is an African American man, and they are not. These allegations alone are insufficient to state a claim. Plaintiff must allege facts to show that he was treated differently from others with whom they are similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination on the basis of race. In other words, Plaintiff must allege the circumstances that cause him to believe his unequal treatment was the result of racial discrimination. For example, in *Chang v. Cnty. of Siskiyou*, 746 F. Supp. 3d 808, 826 (E.D. Cal. 2024), the court summarized allegations it found sufficient to state a claim as follows:

> There is a history of animus and discriminatory and racially charged language against Asian Americans, documented by official meeting minutes, reports and other documentations characterizing Asian Americans as a whole to be criminals, drug dealers and gang members who are not true "citizens" or members of the community. A disproportionate number of traffic stops are conducted near predominantly Asian American communities in the County. Asian American drivers are disproportionately stopped and searched in the County. The Department's actions are in stark contrast to the proportion of Asian Americans stopped across the state and in other nearby counties. The proportion of Asian Americans who were stopped during the day, when officers could see the driver, was nearly 60 percent higher than those who were stopped during the night. The median length of stops for Asian American drivers was over 56 percent longer than for non-Asian drivers.

(internal citations omitted). In contrast, the court in *Woods v. City of Hayward*, No. 19-CV-01350-JCS, 2019 WL 5789256, at *5 (N.D. Cal. Nov. 6, 2019), summarized allegations it found

*insufficient* to state a claim as follows:

> Woods's conclusory assertion that "[s]imilarly situated White individuals would not have been the subject of the unreasonable seizure and search" constitutes such a recitation. Woods does not allege, for example, that non-African Americans were *in fact* treated differently in similar circumstances, or any other facts that might support an inference that Defendants' conduct was based on Woods's and his tenants' race. Nor does Woods allege more direct indicia of discrimination, such as any police officer explicitly referring to Woods's or his tenants' race.

(internal citations omitted) (emphasis in original); *see also, e.g., Elsayed v. McAlee*, No. 18-CV-01256-JST, 2018 WL 5880821, at *4 (N.D. Cal. Nov. 8, 2018) ("Plaintiffs identify nothing that officers did or said when they arrested Elsayed, or on any other occasion, that would suggest that their actions were motivated by his race."); *Heyward v. Bart Police Dep't*, No. 3:15-CV-04503-LB, 2016 WL 2619677, at *2 (N.D. Cal. May 9, 2016) (finding insufficient allegations that officers "rushed to judgment and did not give him the same respect that they gave to the other[s] . . . . because the Plaintiff was African American").

Ultimately, determining discriminatory intent "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights*, 429 U.S. at 266. And "[a]lthough Plaintiff is not required to plead his evidence 'or specific factual details not ascertainable in advance of discovery,' a pleading will not be sufficient to state a claim under § 1983 if the allegations are mere conclusions." *Moore v. Brown & Williamson Tobacco, Corp.*, No. C 06-2150 SBA (PR), 2008 WL 4891198, at *7 (N.D. Cal. Nov. 12, 2008) (internal citation omitted) (quoting *Gibson v. United States,* 781 F. 2d 1334, 1340 (9th Cir. 1986)) (citing *Kennedy v. H & M Landing, Inc.,* 529 F.2d 987, 989 (9th Cir.1976) and *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir. 1979)); *see also Ashcroft*, 556 U.S. at 681 (finding allegations of discrimination need be "plausible," not merely "conceivable").

The Court therefore **GRANTS** City Defendants' motion to dismiss this claim with leave to amend. *Lopez*, 203 F.3d at 1127 ("[C]ourt[s] should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts.").

**4. "Personal Injury" (Negligence)**

City Defendants also argue that there is no standalone "personal injury" claim under California or federal law. In his opposition, however, Plaintiff contends that he intended his "personal injury" claim to allege a claim for negligence. Opp'n 6 ("Within the Plaintiff's Second Amended Complaint, the Plaintiff claims and alleges a cause of action for negligence in the word of 'personal injury' against all said Defendants, and each of them, when the Plaintiff claims and alleges that all of the said Defendants, and each of them, caused injury to the Plaintiff by all of the said Defendants', and each of their conduct . . . . ").

Though Plaintiff again mislabeled this claim, given his status as a pro se party, the Court will construe this claim as alleging negligence. This interpretation is also supported by the text of the complaint. Under Plaintiff's claim titled "personal injury," Plaintiff cites the standard for negligence: "California personal injury law is primarily governed by the Civil Code and key Supreme Court precedents that establish a pure comparative fault system. Civil Code Sec. 1714(a): The bedrock of California negligence. It states that everyone is responsible for injuries caused by their want of ordinary care or skill." Compl. ¶ 93.

The Court, however, finds Plaintiff also failed to allege facts sufficient to state a claim for negligence. "An adequately pleaded claim for negligence requires allegations of duty, breach, causation, and damages." *Rosales v. Cnty. of San Diego*, 511 F. Supp. 3d 1070, 1085 (S.D. Cal. 2021) (citing *Alexander v. Diaz*, No. 20CV100-CAB-KSC, 2020 WL 2794546, at *6 (S.D. Cal. May 29, 2020), and *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622 (2013)). Here, apart from noting the word "negligence" in the complaint, Plaintiff alleges no facts identifying the applicable duty, how City Defendants breached this duty, how this breach caused Plaintiff harm, and what injuries Plaintiff suffered as a result.

The Court therefore **GRANTS** City Defendants' motion to dismiss this claim with leave to amend. *Lopez*, 203 F.3d at 1127 ("[C]ourt[s] should grant leave to amend even if no request to

amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**5. IIED**

Finally, City Defendants argue that Plaintiff fails to plead sufficient facts to state a claim for IIED.

A plaintiff bringing an IIED claim must prove: (1) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress"; (2) that the plaintiff actually suffered severe emotional distress; and (3) that the defendant's outrageous conduct was the "actual and proximate" cause of the plaintiff's emotional distress. *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, 874–75 (2010), *as modified on denial of reh'g* (Mar. 1, 2010). Conduct liable for IIED must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004).

The Court finds Plaintiff sufficiently alleges facts to support the first element, but lacks allegations to support the remaining two.

Regarding "extreme and outrageous conduct," Plaintiff alleges that two officers racially profiled him in a traffic stop; falsely accused him of a traffic violation; detained and searched him with no reasonable cause; lied about finding drugs and a firearm; and arrested Plaintiff for thirty days based on Officer Defendants' report of a crime occurring—which the Superior Court later found false during Plaintiff's preliminary hearing. These are serious allegations, and if proven true, would certainly constitute conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pardi*, 389 F.3d at 852. City Defendants argue that the conduct alleged is not "extreme and outrageous" because they contend Officer Defendants' conduct was justified; but this is a question of fact inappropriate on a motion to dismiss. The

United States District Court
Northern District of California

question here is simply whether, accepting all well-pled facts as true and construing them in the light most favorable to Plaintiff, there is a plausible claim for IIED. City Defendants also argue Plaintiff's allegations that Officer Defendants lied are conclusory. But Plaintiff's allegations are based on his belief that a Superior Court judge found Officer Defendants committed perjury. This is sufficient to put City Defendants on notice of the allegations against them.

Where the complaint falls short, however, are allegations regarding Plaintiff's emotional distress and causation. "The California Supreme Court has set a high bar for what can constitute severe distress. Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1376 (2010) (internal quotation marks and citations omitted). Here, though Plaintiff alleges he experienced "emotional distress," he does not allege facts showing how City Defendants' caused him emotional distress, how he experiences emotional distress, or how this emotional distress is "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.*; *see also, e.g., Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (finding "assertions that [the plaintiff] has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" insufficient to show severe emotional distress); *contra Joiner v. Callaghan*, No. 8:24-CV-01160-CBM-KS, 2025 WL 1726392, at *9 (C.D. Cal. Feb. 26, 2025) (finding allegations that the plaintiff "fear[s] for Plaintiff's safety and the safety of his family based on Defendants' conduct which has lasted over two years" sufficient to show severe emotional distress).

The Court therefore **GRANTS** City Defendants' motion to dismiss this claim with leave to amend. *Lopez*, 203 F.3d at 1127 ("[C]ourt[s] should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### 6. Conclusion on City Defendants' Motion to Dismiss

The Court **GRANTS** City Defendant's motion to dismiss Plaintiff's claims for "racial

profiling" (aka, Fourteenth Amendment Equal Protection Clause), "personal injury" (aka, negligence), and IIED with leave to amend. Should Plaintiff choose to file an amended complaint, the Court specifically instructs Plaintiff to correct the titles of his claims for "racial profiling" and "personal injury." As for Plaintiff's claims for false arrest and false imprisonment, the only arguments raised by City Defendants were arguments regarding immunity, which the Court rejected in Section III.B.1. The Court therefore **DENIES** City Defendants' motion to dismiss claims for false arrest and false imprisonment.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** both motions to dismiss with leave to amend. If Plaintiff seeks to file an amended complaint to correct the deficiencies identified in this Order, he must do so by **December 2, 2026**.

**IT IS SO ORDERED.**

Dated: November 4, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California